IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RASHEKIA SHARMONIQUE WONGUS,

    *Plaintiff*,

    v.

THE BENEDICTINE SCHOOL FOR
EXCEPTIONAL CHILDREN, INC.,

    *Defendant*.

Civil No.: 1:24-cv-03635-JRR

## MEMORANDUM OPINION

Pending before the court is Defendant's 12(b)(6) Motion to Dismiss the Entirety of Plaintiff's Amended Complaint. (ECF No. 32; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, by accompanying order, the Motion will be granted in part and denied in part.

## I.    BACKGROUND[1]

### A. Factual Background

In April 2022, *pro se* Plaintiff Rashekia Sharmonique Wongus ("known as Noah Wongus"), a "Black African American homosexual transgender male," began working as a "House Counselor" for Defendant The Benedictine School for Exceptional Children, Inc. (ECF No. 31 p. 1, ¶¶ 2, 3, 10.) Plaintiff began the process of transitioning from female to male approximately two years prior to working for Defendant. *Id*. ¶ 11. Plaintiff alleges that from the time he began working for Defendant until early 2023, his fellow House Counselor colleagues, all of whom were Black women, were supportive of his transition. *Id*. ¶ 12.

In early 2023, Plaintiff began working with a new House Counselor, Katlyn Bloodworth, who is a White woman. (ECF No. 31 ¶ 13.) Plaintiff asserts that Ms. Bloodworth

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Amended Complaint. (ECF No. 31.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

was unsupportive of his transition and "lifestyle," and regularly "disparage[d]" him, saying things like he "would be going to 'hell'" and "his lifestyle and medical situation were unacceptable to '[G]od.'"  *Id*. ¶¶ 14–15.  Plaintiff claims that Ms. Bloodworth's constant remarks "created a hostile work environment" and he experienced emotional distress at the thought of going to work and being around her.  *Id*. ¶¶ 16–17.  Although Plaintiff complained to Human Resources ("HR") about Ms. Bloodworth's comments, he asserts that no corrective action was taken by Defendant to alleviate his concerns or ameliorate the situation.  *Id*. ¶ 18.

Due to the emotional distress and hostile environment caused by Ms. Bloodworth's conduct, and shortly after complaining to Defendant, Plaintiff took medical leave from March 28 to April 3, 2023.  (ECF No. 31 ¶ 19.)  During that time, Plaintiff alleges, other House Counselors "observed Ms. Bloodsworth violating school policy by having family members present in the workplace."  *Id*.  This violation was reported to Defendant by Plaintiff's colleagues, but "no corrective action was taken."  *Id*. ¶ 20.  Plaintiff claims that in retaliation for complaints made about Ms. Bloodworth to HR, the Black House Counselors were accused of "misuse of funds and abusing students."  *Id*. ¶ 21.  Plaintiff asserts he "has never abused students and has never knowingly misused funds."  *Id*. ¶ 22.

Although he was initially informed no complaints were made about him and he was not being investigated, Defendant accused Plaintiff and his Black colleagues of misconduct "when he refused a request to falsely implicate his colleagues and support the complaints that had been made against them."  (ECF No. 31 ¶ 24.)  Subsequently, Defendant initiated a related investigation as to (what Plaintiff asserts are false) claims of misuse of funds and abuse by Defendant and other Black employees.  *Id*. ¶ 25.  Plaintiff complained to Defendant that it was "not following its own internal policies" regarding investigations and that only Black employees were being investigated while non-Black employees were not investigated or disciplined for engaging in the same or similar conduct.  *Id*.

2

On June 26, 2023, "shortly after complaining" about Defendant's investigatory process, Plaintiff was terminated. (ECF No. 31 ¶ 26.) Plaintiff claims the "pretextual reason provided by Defendant [for his termination] were false allegations that he had engaged in misconduct." *Id.* Plaintiff asserts on information and belief that he was terminated for engaging in protected activities, including complaining about unlawful discrimination, Defendant's investigatory process, and the "discriminatory application of the disciplinary process." *Id.* ¶ 27.

**B. Procedural History**

Prior to this action, on April 9, 2024, Plaintiff filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). (ECF No. 31 ¶ 7; Ex. A, ECF No. 33-2.) On October 23, 2024, Plaintiff received a right to sue letter from the EEOC. (*Id.* ¶ 9; Ex. B, ECF No. 33-2.) On December 16, 2024, Plaintiff initiated this action against Defendant. (ECF No. 1.) On February 11, 2025, Defendant filed a motion to dismiss (ECF Nos. 10, 11), which the parties fully briefed. (*See* ECF Nos. 18, 23.) Prior to any ruling on the motion to dismiss, Plaintiff filed a Motion for Leave to File an Amended Complaint (ECF No. 28). The court granted that motion and thus denied the motion to dismiss at ECF No. 10 as moot. (ECF No. 30.) Plaintiff's Amended Complaint was docketed on July 17, 2025. (ECF No. 31.)

In his Amended Complaint, Plaintiff asserts the following counts:

> Count I: Sex and Sexual Orientation Discrimination under the Maryland Fair Employment Practice Act ("MFEPA") (MD. CODE ANN., STATE GOV'T § 20-601, *et seq.*);[2]
>
> Count II: Race Discrimination under MFEPA;
>
> Count III: Retaliation under MFEPA;
>
> Count IV: Sex and Sexual Orientation Discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") (42 U.S.C. §§ 2000e, *et seq.*);

---

[2] Plaintiff refers to MFEPA as Title 20. For clarity the court refers to the statute as MFEPA.

Count V: Race Discrimination under Title VII; and

Count VI: Retaliation under Title VII.

(ECF No. 31 ¶¶ 28–52.)  Plaintiff seeks "backpay" and "front pay," damages for emotional distress in excess of $75,000, "an award of statutory interest" pursuant to MFEPA and/or Title VII "on such corresponding monetary awards," attorney's fees and costs, and such further relief as the court deems appropriate.  *Id*. at p. 8.

Defendant moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    <u>LEGAL STANDARDS</u>

### A.  Federal Rule of Civil Procedure 12(b)(6)

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Therefore, "a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).  "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient."  *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423,

434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court generally does not consider evidence outside of the complaint. The court may, however, consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'" *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Specifically, the court may take judicial notice of publicly available information on state and federal government websites without converting the motion to one for summary judgment. *See U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on the state and federal government websites.").

Defendant attaches to the Motion a copy of Plaintiff's EEOC Charge of Discrimination (the "Charge") and the later-issued EEOC right to sue letter. (Ex. A, ECF No. 33-1; Ex. B, ECF No. 33-2.) Appended to his opposition to the Motion, Plaintiff attaches seven exhibits. (Exs. A–G, ECF Nos. 35-1–35-7.) In the employment discrimination context, courts regularly conclude that EEOC charges are integral to a plaintiff's complaint; and this court does as well. *See, e.g.*, *Virella v. M.B.G. Enterprises Inc.*, No. CV RDB-21-1844, 2022 WL 36452, at *2 (D.

Md. Jan. 4, 2022); *McKenzie-El v. Ports of Am.*, No. CV ELH-19-1980, 2020 WL 1185193, at *7 (D. Md. Mar. 12, 2020); *Carter v. Montgomery Cnty., Maryland*, No. CV TDC-18-2249, 2019 WL 3804765, at *2 (D. Md. Aug. 13, 2019); *Bowie, v. Univ. of Maryland Med. Sys.*, No. CIV.A. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015); *Garey v. Wal-Mart Stores E., LP*, No. CIV.A. MJG-15-778, 2015 WL 5157475, at *1 n.2 (D. Md. Sept. 1, 2015).

Plaintiff's EEOC charge and right to sue letter are expressly referenced in the Amended Complaint,[3] they are integral to his allegations (inasmuch as his entitlement to pursue this action arises in part from exhaustion of administrative remedies), and there is no challenge as to their authenticity. Accordingly, the court may consider them in evaluating the Motion. However, exhibits attached to Plaintiff's opposition are not integral to Plaintiff's Amended Complaint; the court declines to consider them.

## III.    ANALYSIS

As an initial matter, the court is ever mindful that *pro se* filings "must be construed liberally, . . . so as to do substantial justice," and are held to less stringent standards than filings drafted by lawyers. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *Erickson v. Paradus*, 551 U.S. 89, 94 (2007); FED. R. CIV. P. 8(e); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "In practice, this liberal construction allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from pleading a plausible claim, and this court "may not act as an advocate for a self-represented litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (quoting *Bey v. Shapiro Brown & Alt, LLP*, 997

---

[3] The Amended Complaint references the Charge of Discrimination and notes that it is attached as Exhibit 1; however, no exhibits were filed with the Amended Complaint. (ECF No. 31.)

6

F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

### A. Plaintiff's Title VII and MFEPA Claims[4]

Plaintiff alleges he was subject to harassment and discrimination based on his sex, sexual orientation, and race, and Defendant terminated his employment in retaliation for Plaintiff's legally protected activities. (ECF No. 31 at ¶¶ 28–52.) Defendant argues: (1) Plaintiff's Amended Complaint fails to place Defendant on notice of his discrimination or harassment claims and (2) fails to state a claim upon which relief can be granted. (ECF No. 33 at pp. 7–20.)

As Defendant notes in its reply, Plaintiffs opposition to the Motion fails to address the specific arguments asserted by Defendant and instead includes a recitation of facts, most of which were not included in Plaintiff's Amended Complaint. (ECF No. 35.) "Deficiencies in a pleading cannot be cured by identifying new facts or making new allegations in an opposition to a motion to dismiss." *Smith v. Mr. Cooper Grp. Mortg.*, No. CV 23-3008-PJM, 2024 WL 1179075, at *3 (D. Md. Mar. 19, 2024); *see also Hampton v. Wells Fargo Bank, N.A.,* No. CV DLB-22-1712, 2023 WL 6200009, at *2 n. 3 (D. Md. Sept. 22, 2023) (quoting *Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015)) (finding that "[a]n opposition is not a proper vehicle for amending a complaint"). Moreover, if a plaintiff fails to respond to an argument in a motion to dismiss, the relevant claim may be dismissed. *See Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (finding that by failing to respond to the defendant's argument challenging the plaintiff's claim for discriminatory discharge, "the plaintiff abandons any discriminatory discharge

---

[4] MFEPA is the state law analogue to federal employment discrimination statutes. *Ensor v. Jenkins*, No. CV ELH-20-1266, 2021 WL 1139760, at *18 (D. Md. Mar. 25, 2021). Accordingly, "[c]ourts judge discrimination and retaliation claims brought under MFEPA by the same standards as those same claims brought under Title VII." *Lowman v. Maryland Aviation Admin.*, No. CV JKB-18-1146, 2019 WL 133267, at *4 (D. Md. Jan. 8, 2019) (citing *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496–97 (D. Md. 2013)). Thus, the court will analyze Plaintiff's MFEPA claims in conjunction with his Title VII claims.

claim."). Nevertheless, the court "has an obligation to review the motion[] to ensure that dismissal is proper." *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n. 3 (4th Cir. 2014). Accordingly, the court will not consider new facts raised by Plaintiff in his opposition, but will address each argument raised in the Motion.

By way of background, "Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that [he] reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326–27 (4th Cir. 2018); *see Roberts v. Glenn Indus. Group, Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (holding that "Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination."). "A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, [he] may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570, at *2 (4th Cir. Nov. 2, 2022). Pursuant to *McDonnell Douglas*, the plaintiff bears the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

### 1. *Failure to Meet Required Pleading Standards*

First, Defendant argues the court should dismiss Counts I and IV (for sex and sexual orientation discrimination under MFEPA and Title VII) and Counts II and V (for race discrimination under MFEPA and Title VII) because Plaintiff "fails to clearly and specifically put [Defendant] on notice as to whether Plaintiff's claims are based on discrimination or

8

harassment under either statute." (ECF No. 33 at p. 7.)[5] Defendant claims that the Amended Complaint "improperly comingles discrimination and harassment claims" under Title VII and MFEPA, violating Rules 8 and 10 of the Federal Rules of Civil Procedure. *Id.*

Under Federal Rule of Civil Procedure 8(a), a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 10 requires that each claim founded on a separate transaction or occurrence must be stated in a separate count, "[i]f doing so would promote clarity[.]" FED. R. CIV. P. 10(b). Defendant cites a case from the Southern District of West Virginia for the proposition that Plaintiff is not permitted to comingle separate and distinct claims in one count of a complaint. (ECF No. 33 at p. 7.) In that case, the court noted that the plaintiff (represented by counsel) appeared to combine several causes of action within each count of the complaint. *Fields v. King*, 576 F. Supp. 3d 392, 400 (S.D. W.Va. 2021). While the court found that stating each cause of action in an individual count "would undoubtedly promote clarity," it went on to address the merits of each count and did not dismiss the claims on the basis that separate causes of action were combined in one count. *Id.* at p. 400 n. 2.

Similarly here, the court declines to dismiss Counts I, II, IV, and V for improperly combining separate causes of action in one count. While Defendant is correct that claims of discrimination for disparate treatment and harassment/hostile work environment require different analyses, as discussed *infra*, it is clear from the face of the Amended Complaint that Plaintiff intends to assert claims for hostile work environment in Counts I and IV (for sex and sexual orientation discrimination) and separate claims for disparate treatment in Counts II and V (for race discrimination). While perhaps inartfully drafted, the liberal construction afforded to *pro se* Plaintiff's Amended Complaint allows this court "to recognize claims despite various

---

[5] Defendant does not bring a motion for more definite statement per Rule 12(e); therefore, the court constrains its evaluation of the Motion per Rule12(b)(6), as asserted.

formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall*, 42 F.4th at 218. Further, Defendant addresses the sufficiency of the distinct causes of action (no matter how pleaded) in its Motion; thus, it would appear Defendant was plainly and properly on notice of Plaintiff's claims. (ECF No. 33 at pp. 15–20.)

### 2. *Failure to Exhaust Administrative Remedies*

Next, Defendant argues that Plaintiff failed to exhaust his administrative remedies as to Counts II and V (for race discrimination under Title VII and MFEPA) and Counts III and VI (for retaliation under Title VII and MFEPA). (ECF No. 33 at pp. 10–15.)

Before filing suit under Title VII, a plaintiff must exhaust administrative remedies. *Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 423 (D. Md. 2024). The same is true under MFEPA. *Bush v. Frederick Cnty. Pub. Schs.*, 2024 WL 639255, at *3 (4th Cir. Feb. 15, 2024) (*per curiam*) ("Both Title VII and the [MFEPA] require a plaintiff alleging employment discrimination to exhaust administrative remedies before filing their lawsuit"). To exhaust administrative remedies, a plaintiff must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within 180 days of the date on which "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1); *Bush*, 2024 WL 639255, at *3.

Although the exhaustion requirement is not jurisdictional, "it is a necessary step in pursuing the claim in [c]ourt." *Jackson v. United States*, No. 8:22-cv-00772, 2022 WL 6754671, at *2 (D. Md. Oct. 11, 2022); *see Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 550 (2019) (holding that "Title VII's charge-filing requirement is not of jurisdictional cast"). The filing of an administrative charge serves two important purposes: "First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th

Cir. 2013) (quoting *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th Cir. 1984)).  Administrative exhaustion is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005).  Rather, it "serves a vital function in the process of remedying an unlawful employment practice." *Balas*, 711 F.3d at 407.

Generally, "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506.  In determining whether a plaintiff has exhausted his remedies with respect to a certain claim, the court looks to claims raised in the administrative complaint, as well as claims "that would naturally have arisen from an investigation thereof." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)).  "[W]hen the claims in [a] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative [complaint],' they are procedurally barred." *Id.* (quoting *Chacko*, 429 F. 3d at 508–10)).

In *Walton v. Harker*, 33 F.4th 165 (4th Cir. 2022), the Fourth Circuit succinctly explained:

> A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit.  The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. [F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge.  Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII [] lawsuit.

*Id.* at 172 (citations omitted).  The court also recognizes that administrative charges "often are not completed by lawyers and as such 'must be construed with utmost liberality.'" *Balas*, 711 F.3d at 408 (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460

(4th Cir. 1988)).  The court, however, is not "at liberty to read into administrative charges allegations they do not contain." *Id.*

First, Defendant asserts that Plaintiff's allegation of racial discrimination (Counts II and V) concerning the withholding of a $500 bonus (which he claims was not withheld from other non-Black employees) was not administratively exhausted because he never raised this allegation in his Charge with the EEOC.  (ECF No. 33 at p. 11.)  Defendant also argues more broadly that these counts should be dismissed in their entirety because Plaintiff's Amended Complaint "makes it clear that he is alleging harassment on the basis of his race[]" and he failed to raise an allegation of race-based harassment in his Charge.  (ECF No. 33 at p. 13.)

Plaintiff's Charge expressly alleges that he was terminated on the basis of "Race, Retaliation, Sex" and "due to my race (black)" stemming from, *inter alia*, allegations that he was "stealing and abusing patients."  (ECF No. 33-1 at pp. 2–3.)  Additionally, he includes in the Charge that two other Black colleagues (whom he identifies by name) were "discharged for similar offenses."[6]  *Id.* at p. 3.  In Counts II and V of the Amended Complaint, Plaintiff includes that he learned Defendant "was withholding a scheduled $500 bonus from [him] because he and Black colleagues were 'under investigation.'"  (ECF No. 31 ¶¶ 34, 47.)  The Amended Complaint makes clear that the investigation concerned the allegations against Plaintiff and other Black colleagues for "misuse of funds and abusing students[]" and that Plaintiff was terminated "after complaining about the discriminatory investigation process."  *Id.* ¶¶ 21–26.  Accordingly, the court finds that Plaintiff's claim concerning the withholding of a $500 bonus would have arisen naturally from an investigation into his Charge.  *See Parker*, 915 F.3d at 306, *supra*.

---

[6] Given the context and the standard on reviewing the sufficiency of the Amended Complaint, the court reasonably construes Plaintiff to assert that these Black co-workers were also wrongfully accused and discharged based on race.

Further, Defendant contends that, to the extent Plaintiff asserts Counts II and V on a theory of race-based harassment, Plaintiff failed to exhaust any harassment or hostile work environment claim based on his race, as he did not lodge such a complaint in his Charge. (ECF No. 33 at p. 13–14.) Specifically, Defendant points to the fact that Plaintiff raised harassment based on his sex/sexual orientation (and not his race) in his Charge. (ECF No. 33-1 at p. 2.) However, Plaintiff's Amended Complaint alleges a hostile work environment on the basis of his sex/sexual orientation, not his race.[7] Accordingly, where Plaintiff has not sought to pursue a race-based harassment claim here, the court need not reach the question of whether Plaintiff has administrative exhausted such claims.

Finally, Defendant argues that Counts III and VI (for retaliation) should be dismissed in their entirety because the fact pattern raised by Plaintiff in his Charge, which forms the basis of his retaliation claim, is not the same fact pattern raised by Plaintiff in the Amended Complaint. (ECF No. 33 at p. 14.) Defendant argues that, in the Amended Complaint, Plaintiff's retaliation claim is alleged to arise from his opposition to Defendant's investigation into his alleged conduct, but that in his Charge, Plaintiff states he was retaliated against because he complained of harassment on the basis of his sex/sexual orientation. *Id.*

Again, the court disagrees with Defendant's rigid construction. Plaintiff's Charge states that Plaintiff believes he "was discharged due to [his] race [], and in retaliation for engaging in a protected activity" in violation of Title VII. (ECF No. 33-1 at p. 3.) Counts III and VI of the Amended Complaint, asserting claims of retaliation, allege that Plaintiff was terminated after reporting "what he believed to be a discriminatory application of Defendant's disciplinary process to Defendant." (ECF No. 31 ¶¶ 38–39, 51–52.) As set forth above, both the Charge and Amended Complaint assert that Plaintiff was terminated as a result of

---

[7] To the extent Counts II and V are based on claims of discrimination/disparate treatment based on his race, Defendant does not argue such claims were not administratively exhausted.

Defendant's investigation into allegations of misuse of funds and abuse made against Plaintiff and other Black colleagues. Indeed, the Amended Complaint characterizes Plaintiff's complaint concerning the "discriminatory application process" as a protected activity, which forms the basis of his retaliation claim in the Charge. (ECF No. 31 ¶ 26.) Thus, the court finds that Plaintiff's allegations concerning Defendant's allegedly discriminatory investigation process would naturally have arisen from an investigation into his Charge. *See Parker*, 915 F.3d at 306, *supra*. As such, the court is not persuaded that Plaintiff's claims for retaliation (Counts III and VI) are procedurally barred.

### 3. *Claims Based on Sexual Orientation*

Defendant further argues that Counts I and IV (for sex and sexual orientation discrimination) should be dismissed to the extent they are predicated on Plaintiff's sexual orientation because he fails to plead facts supporting a claim of sexual orientation discrimination or a hostile work environment claim on the basis of his sexual orientation. (ECF No. 33 at pp. 14–20.) Defendant does not argue that Counts I and IV should be dismissed to the extent they are predicated on Plaintiff's sex and gender identity as a transgender man.

### a. Disparate Treatment Based on Sexual Orientation

Under Title VII, a plaintiff may establish disparate treatment discrimination by: "(1) 'demonstrating through direct or circumstantial evidence that [plaintiff's status in a protected class] was a motivating factor in the employer's adverse employment action;' or (2) relying on the burden shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213–14 (4th Cir. 2007)). Absent direct evidence, under the *McDonnell* framework, a plaintiff must first establish the elements of a prima facie case of discrimination under Title VII. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012).

"The plaintiff need not commit to either of the two approaches at the motion to dismiss stage." *Williams-Johnson v. Paris Foods Corp.*, No. CV RDB-24-1197, 2025 WL 2257617, at *3 (D. Md. Aug. 7, 2025) (citing *Chen v. Md. Dep't of Health & Mental Hygiene*, No. ELH-15-1796, 2016 WL 4539204, at *17 (D. Md. Aug. 29, 2016)).

"To survive a motion to dismiss, however, an employment discrimination claim need not establish a *prima facie* case." *Copes v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, No. CV RDB-23-2306, 2025 WL 19987, at *4 (D. Md. Jan 2, 2025) (citing *McCleary-Evans v. Md. DOT*, 780 F.3d 582, 584 (4th Cir. 2015)).  Instead, the court's inquiry is whether Plaintiff "alleges facts that plausibly state a violation of Title VII 'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (quoting *Coleman*, 828 F.3d at 190). "Reference to the elements of a *prima facie* claim of discrimination 'is helpful to gauge the sufficiency of the allegations[,]' even if the pleading is not actually required to satisfy all the elements." *Williams-Johnson*, 2025 WL 2257617, at *3 (citing *Gaines v. Balt. Police Dep't*, 657 F. Supp. 3d 708, 734 (D. Md. 2023)).  In the context of sex discrimination, a plaintiff "must allege sufficient facts to make it plausible that (1) [he] suffered an adverse employment action, and (2) the action was because of [his] sex." *Franovich v. Hanson*, 687 F. Supp. 3d 670, 683 (D. Md. 2023).  As previously stated by this court:

> In *Bostock v. Clayton County*, 590 U.S. 644, 140 S. Ct. 1731, 207 L.Ed.2d 218 (2020), the United States Supreme Court resolved that discrimination against gay or transgender employees is discrimination "on the basis of sex" for purposes of Title VII, because "to discriminate on these grounds requires an employee to intentionally treat individual employees differently because of their sex." *Id.* at 1742.  For example, an employer who "fires [a] male employee for no reason other than the fact he is attracted to men," but tolerates the same trait (sexual attraction to men) in a female employee "singles out an employee to fire based in part on the employee's sex." *Id.* at 1741.  The employer would not have fired the employee had he been a woman.

15

*Doe v. Cath. Relief Servs.*, 529 F. Supp. 3d 440, 447 (D. Md. 2021).   Accordingly, discrimination based on sexual orientation and gender identity are both forms of discrimination "on the basis of sex." *Id.*

Defendant argues that Plaintiff fails to state a claim for disparate treatment discrimination because there are no facts alleged in the Amended Complaint that Plaintiff "suffered any adverse employment action because of his" sexual orientation. (ECF No. 33 at p. 16.)  The court need not address Defendant's distinction as to a claim for disparate treatment based on Plaintiff's sexual orientation or gender identity because the court finds that Plaintiff's Amended Complaint does not assert a claim for disparate treatment on the basis of sex under either category.   Defendant does not dispute that termination constitutes an adverse employment action; rather, it argues that Plaintiff fails to establish that his termination was because of his sexual orientation. (ECF No. 33 at p. 16.)  Here, the court agrees.  Counts I and IV (for sex and sexual orientation discrimination) do not refer to Plaintiff's termination or any other adverse employment action taken on the basis of his sexual orientation or identity. Rather, Plaintiff alleges that he informed Defendant that his White colleague, Ms. Bloodsworth,[8] was discriminating against Plaintiff on the basis of his sex and sexual orientation, and that her treatment of Plaintiff created a hostile work environment, which forced him to take medical leave and caused emotional distress.  (ECF No. 31 ¶¶ 29–32, 42–45.) Moreover, as Defendant notes, Plaintiff fails to allege any comparator sufficient to set forth a disparate treatment claim.  *See Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 (D. Md. 2013), *aff'd*, 576 F. App'x 199 (4th Cir. 2014) (holding that a plaintiff fails to state a claim for disparate treatment when they provide no evidence that they received different treatment from similarly situated employees outside the protected class").

---

[8] The court also notes Bloodsworth is not alleged to be a supervisor; rather she is identified as another House Counselor, which is the position Plaintiff held when employed by Defendant. (ECF No. 31 at ¶¶ 11-13.)

Based on the foregoing, Plaintiff's allegations are insufficient to state a claim that he was subjected to disparate treatment based on his sex and sexual orientation. To the extent Counts I and IV are based on same, they will be dismissed.

b.   Hostile Work Environment

Turning to Plaintiff's allegations of harassment and hostile work environment, "[i]n the years since Title VII's enactment, the Supreme Court has made clear that discrimination on the basis of sex may be manifested in a variety of ways." *Campbell v. Becton, Dickinson & Co.*, No. 1:22-CV-03043-ELH, 2024 WL 1299354, at *19 (D. Md. Mar. 27, 2024). To maintain a claim for hostile work environment, Plaintiff must allege that: "(1) [he] experienced unwelcome harassment; (2) the harassment was based on [plaintiff's status in a protected class]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *see also Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 716 (4th Cir. 2024) (same).

Defendant does not dispute, and the court is satisfied, that Plaintiff satisfies elements one and four. (ECF No. 33 at p. 18.) Plaintiff experienced unwelcome harassment as a result of comments made by Ms. Bloodsworth to Plaintiff satisfying the first element, and Defendant apparently concedes that there is some basis for imposing liability on Defendant as Plaintiff's employer. *Id.* Defendant argues, however, that the Amended Complaint fails to establish the second and third elements of a hostile work environment claim because Plaintiff fails to allege that the offending conduct was based on his sexual orientation or that the conduct was sufficiently severe or pervasive. *Id.* at pp. 18–20.

Here, Plaintiff generally asserts that he experienced harassment by his colleague Ms. Bloodworth because she was unsupportive of his transition and "lifestyle" and regularly disparaged him by informing him that he "would be going to 'hell'" and "his lifestyle and

17

medical situation were unacceptable to '[G]od.'"  (ECF No. 31 ¶¶ 14–15.)  The court finds that

this harassment, as alleged, was "because of" his sex, which, as set forth above, encompasses

both gender identity and sexual orientation.  *See Smith v. First Union Nat. Bank*, 202 F.3d 234,

242 (4th Cir. 2000) ("An employee is harassed or otherwise discriminated against 'because of'

his or her sex if, 'but-for' the employee's sex, he or she would not have been the victim of the

discrimination.") (citing *Wrightson v. Pizza Hut of America, Inc.*, 99 F.3d 138, 142 (4th Cir.

1996)).  Accordingly, Plaintiff plausibly alleges the second element for a claim of hostile work

environment.

As to the third element, Defendant does not dispute that Plaintiff's claims of harassment

by Ms. Bloodsworth were severe or pervasive with regard to his gender identity; rather,

Defendant argues that Plaintiff's allegations of harassment do not appear to pertain to his sexual

orientation and, as such, cannot be described as severe or pervasive.  (ECF No. 33 at pp. 19–

20.)  Again, harassment on the basis of sex encompasses both sexual orientation and gender

identity, so the distinction Defendant asks the court to draw is immaterial on the Motion.

The severe/pervasive "element of a hostile work environment claim has both subjective

and objective components.  Therefore, the [plaintiff] must show that [the plaintiff] did perceive,

and a reasonable person would perceive, the environment to be abusive or hostile."  *EEOC v.*

*Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009) (citing *Harris v. Forklift Systems,*

*Inc.,* 510 U.S. 17, 21–23 (1993)).  As explained by this court:

> The United States Court of Appeals for the Fourth Circuit sets a
> "high bar" that must be cleared in order to establish the severe
> and pervasive element.  *E.E.O.C. v. Sunbelt Rentals, Inc.,* 521
> F.3d 306, 315 (4th Cir.2008).  Intermittent acts of harassment are
> insufficient to establish that a hostile work environment is severe
> or pervasive.  *Greene v. A. Duie Pyle, Inc.,* 371 F.Supp.2d 759,
> 762–63 (D. Md. 2005) (citing *Faragher v. City of Boca Raton,*
> 524 U.S. 775 (1998)).  Indeed, Title VII does not mandate
> civility in the workplace. *Id. . . .* However, a work environment
> can be considered hostile if it is "consumed by remarks that
> intimidate, ridicule, and maliciously demean the status of [a

protected class]." *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 242 (4th Cir.2000).

*Engler v. Harris Corp.,* 2012 WL 3745710, at *5 (D. Md. Aug. 28, 2012). Nonetheless, an "isolated incident of harassment can amount to discriminatory changes in the terms and conditions of employment, if that incident is extremely serious. *Boyer-Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 277 (4th Cir. 2015) (internal quotation marks omitted).

Here, Plaintiff plausibly alleges that the alleged harassment was sufficiently severe or pervasive. Plaintiff complains that Ms. Bloodsworth's remarks regarding his sex and sexual orientation were "constant" and "made on a near daily basis," and eventually forced him to take medical leave for one week due to emotional distress. (ECF No. 31 ¶¶ 17, 19.) Additionally, Plaintiff claims the comments continued even after he complained of the harassment to Defendant. *Id.* ¶¶ 18. The court also finds that, on the facts alleged, a reasonable person could conclude Plaintiff's work environment was objectively hostile, given the frequency of the alleged harassment, the severity of Ms. Bloodsworth's comments, and their interference with Plaintiff's work performance.

Therefore, reading all allegations in the light most favorable to Plaintiff, the court finds that Plaintiff satisfies the pleading requirements for each element of a hostile work environment claim based on sex.

## IV.   CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 32) will be granted in part and denied in part.

/S/

March 23, 2026

_____
Julie R. Rubin
United States District Judge

19